UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DOWNTOWN MUSIC PUBLISHING LLC,
OLE MEDIA MANAGEMENT, L.P., BIG
DEAL MUSIC, LLC, CYPMP, LLC, PEER
INTERNATIONAL CORPORATION, PSO
LIMITED, PEERMUSIC LTD., PEERMUSIC
III, LTD., PEERTUNES, LTD., SONGS OF
PEER LTD., RESERVOIR MEDIA
MANAGEMENT, INC., THE RICHMOND
ORGANIZATION, INC., ROUND HILL
MUSIC LLC, THE ROYALTY NETWORK,
INC., and ULTRA INTERNATIONAL
MUSIC PUBLISHING, LLC,

        Plaintiffs and Counterclaim
        Defendants, and

GREENSLEEVES PUBLISHING LIMITED,
ME GUSTA MUSIC, LLC, RALEIGH
MUSIC PUBLISHING LLC, STB MUSIC,
INC., and TUNECORE, INC.,

        Plaintiffs, and

NATIONAL MUSIC PUBLISHERS'
ASSOCIATION, INC.,

        Counterclaim Defendant,

             v.

PELOTON INTERACTIVE, INC.,

        Defendant and Counterclaim
        Plaintiff.

No. 19-cv-02426 (DLC)

**ORAL ARGUMENT REQUESTED**

---

**COUNTERCLAIM DEFENDANTS' REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS DEFENDANT-
COUNTERCLAIM PLAINTIFF'S COUNTERCLAIMS**

PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
Tel.: (212) 373-3000
Fax: (212) 757-3990

*Attorneys for Counterclaim Defendants*

Dated: September 6, 2019

# **TABLE OF CONTENTS**

Page

Table of Authorities ...................................................................................................... ii

Preliminary Statement.................................................................................................. 1

Argument ....................................................................................................................... 1

I. PELOTON FAILS TO ALLEGE A CONSPIRACY TO BOYCOTT OR AN
    ANTICOMPETITIVE COLLECTIVE LICENSING AGREEMENT ................... 1

    A.    Peloton's Challenge to the Publishers' Joint Instigation of a Copyright
    Infringement Lawsuit Is Protected by *Noerr-Pennington* Immunity ............... 1

    B.    Peloton Fails Adequately to Allege a Conspiracy under *Twombly* ................... 4

    C.    Peloton Has Failed to Plead a Rule of Reason Case ........................................ 6

II. PELOTON FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH
    PROSPECTIVE BUSINESS RELATIONS ........................................................... 8

Conclusion ................................................................................................................... 10

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alexander Interactive, Inc.* v. *Leisure Pro Ltd.*,
No. 14–cv–2796, 2014 WL 4651942 (S.D.N.Y. Sept. 16, 2014) ..................................9

*In re American Express Anti-Steering Rules Antitrust Litig.*,
361 F. Supp. 3d 324 (E.D.N.Y. 2019) ....................................................................7

*American Needle, Inc.* v. *National Football League*,
560 U.S. 183 (2010)..................................................................................................6

*U.S.* v. *Apple, Inc.*,
791 F.3d 290 (2d Cir. 2015)......................................................................................6

*Arcadia Biosciences, Inc.* v. *Vilmorin & Cie*,
356 F. Supp. 3d 379 (S.D.N.Y. 2019)......................................................................10

*Bell Atlantic Corp.* v. *Twombly*,
550 U.S. 544 (2007)..................................................................................................4

*Broadcast Music, Inc.* v. *Columbia Broad. Sys., Inc.*,
441 U.S. 1 (1979)...................................................................................................3, 6

*Carvel Corp.* v. *Noonan*,
3 N.Y.3d 182 (N.Y. 2004) .........................................................................................9

*Chapman* v. *N.Y.S. Div. for Youth*,
546 F.3d 230 (2d Cir. 2008)......................................................................................7

*Clean Coal Techs., Inc.* v. *Leidos, Inc.*,
377 F. Supp. 3d 303 (S.D.N.Y. 2019).......................................................................9

*Clorox Co.* v. *Sterling Winthrop, Inc.*,
117 F.3d 50 (2d Cir. 1997).........................................................................................7

*Columbia Pictures Industries, Inc.* v. *Professional Real Estate Investors, Inc.*,
944 F.2d 1525 (9th Cir. 1991) ...................................................................................2

*Connecticut Fine Wines and Spirits, LLC* v. *Seagull*,
916 F.3d 160 (2d Cir. 2019).......................................................................................4

*Friedman* v. *Coldwater Creek, Inc.*,
321 F. App'x 58 (2d Cir. 2009) ..................................................................................9

*Guzik* v. *Albright*,
   No. 16-CV-2257, 2018 WL 4386084 (S.D.N.Y. Sept. 14, 2018).................................10

*FTC* v. *Indiana Federation of Dentists*,
   476 U.S. 447 (1986)........................................................................................................3

*Interscope Records* v. *Time Warner, Inc.*,
   No. CV 10–1662 SVW, 2010 WL 11505708 (C.D. Cal. June 28, 2010)......................2

*Major League Baseball Props.* v. *Salvino, Inc.*,
   542 F.3d 290 (2d Cir. 2008)...........................................................................................6

*Maverick Recording Co.* v. *Chowdhury*,
   No. CV-07-640, 2008 WL 3884350 (E.D.N.Y. Aug. 19, 2008)....................................2

*Mayor and City Council* v. *Citigroup*, *Inc.*,
   709 F.3d 129 (2d Cir. 2013)...........................................................................................4

*Meredith Corp.* v. *SESAC*,
   1 F. Supp. 3d 180 (S.D.N.Y. 2014) ...............................................................................7

*PrimeTime 24 Joint Venture* v. *National Broadcasting Co.*,
   219 F.3d 92 (2d Cir. 2000).............................................................................................2

*Professional Real Estate Investors* v. *Columbia Pictures, Inc.*,
   508 U.S. 49 (1993)..........................................................................................................1

*Sidney Frank Importing Co.* v. *Beam Inc.*,
   998 F. Supp. 2d 193 (S.D.N.Y. 2014)............................................................................9

*Sorias* v. *Nat'l Cellular USA, Inc.*,
   124 F. Supp. 3d 244 (E.D.N.Y. 2015) ...........................................................................8

*Sosa* v. *DIRECTV, Inc.*,
   437 F.3d 923 (9th Cir. 2006) .........................................................................................2

*New York ex rel Spitzer* v. *Saint Francis Hosp.*,
   94 F. Supp. 2d 399 (S.D.N.Y. 2000)..............................................................................6

*Tanaka* v. *University of Southern California*,
   252 F.3d 1059 (9th Cir. 2001) .......................................................................................8

*Union Carbide Corp.* v. *Montell N.V.*,
   944 F. Supp. 1119 (S.D.N.Y. 1996).............................................................................10

*U.S.* v. *Wallace*,
   85 F.3d 1063 (2d Cir. 1996)...........................................................................................5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)..................................................................................................10

## PRELIMINARY STATEMENT

Peloton's opposition to Counterclaim Defendants' motion to dismiss (the "Opposition") does nothing to remedy the core defects of its antitrust and tortious interference counterclaims, which remain a fruitless attempt to deflect attention from Peloton's years of blatant and willful copyright infringement.

Peloton challenges the Publishers' joint decision to file a copyright infringement lawsuit and conduct incidental to that decision.  But Peloton's claims are clearly barred by the *Noerr-Pennington* doctrine which, contrary to Peloton's opposition, covers the conduct at issue here.  To the extent that Peloton alleges a "group boycott" by the Publishers, it has not plausibly pled such a conspiracy under *Twombly*.  And it has not alleged a viable relevant product market— a necessary element of a rule of reason claim (which is the proper antitrust standard notwithstanding Peloton's conclusory assertion of *per se* liability).  Finally, Peloton's tort claim against NMPA fails because NMPA's conduct did not constitute the wrongful means required to uphold such a claim and Peloton does not plead sufficient facts to show that it would have entered into synchronization (or "sync") licenses with music publishers "but for" NMPA's conduct.

## ARGUMENT

### I.   PELOTON FAILS TO ALLEGE A CONSPIRACY TO BOYCOTT OR AN ANTICOMPETITIVE COLLECTIVE LICENSING AGREEMENT

#### A.   Peloton's Challenge to the Publishers' Joint Instigation of a Copyright Infringement Lawsuit Is Protected by *Noerr-Pennington* Immunity

There can be no question that the Publishers' decision to file a joint copyright infringement lawsuit against Peloton is protected by *Noerr-Pennington* immunity.  (*See* Counterclaim Defendants' Opening Brief (the "Opening Br."), at 7–10); *Professional Real Estate Investors* v. *Columbia Pictures, Inc.*, 508 U.S. 49, 60–61 (1993).  Peloton also cannot dispute that *Noerr-Pennington* immunity applies not only to the actual filing of the lawsuit, but also to conduct

1

incidental to the filing of a lawsuit, including coordination in preparation for filing a lawsuit. (Opening Br., at 7–10); *PrimeTime 24 Joint Venture* v. *National Broadcasting Co.*, 219 F.3d 92, 100 (2d Cir. 2000); *Columbia Pictures Industries, Inc.* v. *Professional Real Estate Investors, Inc.*, 944 F.2d 1525, 1528–29 (9th Cir. 1991); *Sosa* v. *DIRECTV, Inc.*, 437 F.3d 923, 936–37 (9th Cir. 2006); *Maverick Recording Co.* v. *Chowdhury*, No. CV-07-640, 2008 WL 3884350, at *3 (E.D.N.Y. Aug. 19, 2008); *Interscope Records* v. *Time Warner, Inc.*, No. CV 10–1662 SVW, 2010 WL 11505708, at *10 (C.D. Cal. June 28, 2010).  Nonetheless, Peloton argues that it can get around *Noerr-Pennington* immunity because its claims mirror the claims that the Second Circuit permitted to proceed in *PrimeTime*.  (Opposition, at 6–7 (characterizing facts of *Primetime* as "identical circumstances" to those alleged in the complaint).)  But the claims permitted to proceed in *PrimeTime* were completely distinct from Peloton's and provide no reason why Peloton's antitrust counterclaims should not be dismissed.

*First*, PrimeTime prevailed in showing that the broadcasters engaged in a "'pattern of baseless, repetitive' signal strength challenges" under the Satellite Home Viewer Act that constituted a "sham"—an exception to *Noerr-Pennington* immunity.  219 F.3d at 102.  But Peloton concedes that the Publishers' joint filing here was not a sham.  (*See* Opposition, at 9.)

*Second*, PrimeTime made concrete allegations that the broadcasters agreed among themselves not to license PrimeTime *even outside the scope of claims that could be settled in their copyright litigation*.  219 F.3d at 102–03.  PrimeTime alleged that the broadcasters conspired to block PrimeTime's emergence as a competitor by collectively refusing to license their content to PrimeTime and that they were pursuing this policy regardless of the outcome of the copyright litigation.  *Id.* at 96.  In other words, PrimeTime adequately alleged that the broadcasters had not merely banded together to vindicate their copyrights, they had colluded to block an emerging competitor.  Peloton does not compete with the Publishers.  Thus, it would not make economic

sense for the Publishers to agree among themselves to "boycott" Peloton in the future even if they lost their copyright infringement lawsuit. "Boycotts," as a category in antitrust cases, are limited to concerted refusals to deal targeted against *competitors*. *FTC* v. *Indiana Federation of Dentists*, 476 U.S. 447, 458 (1986).

*Finally*, and perhaps most significantly, there was no question in *PrimeTime* of the sufficiency of PrimeTime's allegations of conspiracy. Unlike Peloton, PrimeTime made concrete allegations showing that the broadcasters had banded together in an agreement *not to license PrimeTime*, ever: the broadcasters' trade association was unwilling to negotiate at all with PrimeTime, and it "copied a letter to its members telling them not to deal with PrimeTime." *See* 219 F.3d at 97, 102. As set forth in Counterclaim Defendants' opening brief, Peloton has no concrete allegations—only conclusory assertions—of a purported agreement among the Publishers whose trade association, the NMPA, in fact initiated the negotiations with Peloton.

In the Opposition, Peloton primarily relies on an NMPA letter stating that it was "negotiating on behalf of its members to obtain 'compensation for all past, present, and future uses of musical works.'" (Opposition, at 6, 8, 10.) But even assuming, *arguendo*, that NMPA approached Peloton as a joint agent of the Publishers with respect to copyright licensing, that is far from evidence of a collective boycott agreement of the kind alleged in *PrimeTime*. Peloton misunderstands the fundamental distinction between a group of copyright holders bringing sham claims against and collectively agreeing not to license a competitor, which is unlawful, and a joint agent's legitimate enforcement of rights and incidental negotiation of a vertical copyright agreement on behalf of a number of clients, which is lawful. *Broadcast Music, Inc.* v. *Columbia Broad. Sys., Inc.* (*BMI*), 441 U.S. 1 (1979). Since Peloton's allegations evidence at most the latter, it has not pled a conspiracy to boycott that is outside the bounds of *Noerr-Pennington* immunity.

3

**B.**      **Peloton Fails Adequately to Allege a Conspiracy under *Twombly***

Counterclaim Defendants' opening brief showed that Peloton's counterclaim failed to allege a concerted boycott agreement under the requirements of *Bell Atlantic Corp.* v. *Twombly*, 550 U.S. 544 (2007).   Peloton's response is entirely ineffective, continuously confusing two distinct antitrust concepts—employment of a common agent to conduct copyright licensing and a "concerted refusal to deal."   (*E.g.*, Opposition, at 10 (complaining that Publishers "negotiate[d] collectively"), 11 ("concerted refusal to deal").)   Peloton clearly has not alleged the latter—the conspiracy to boycott—sufficiently under *Twombly*.

The "evidence" of conspiracy to boycott on which Peloton relies is that some of the Publishers allegedly cut off their licensing discussions with Peloton at about the same time shortly before they jointly sued Peloton in this lawsuit.   (Opposition, at 14.)   Peloton's obligation "is to allege enough facts to support the inference that a conspiracy actually existed."   *Mayor and City Council* v. *Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013).   Where "the complaint itself gives reasons to believe" that the challenged action could just as readily have been the product of independent decision-making as collusion or there are "natural explanations" for the defendants' parallel conduct other than collusion, the complaint is subject to dismissal for failure adequately to allege a collusive agreement.   *Twombly,* 550 U.S. at 568; *Connecticut Fine Wines and Spirits, LLC* v. *Seagull*, 916 F.3d 160, 176–77 (2d Cir. 2019).

Peloton's counterclaim provides an entirely natural reason why the Publishers would have discontinued their negotiations with Peloton at about the same time in about the same way—they had all agreed to participate in a lawsuit against Peloton.   Peloton's conclusory assertion that, absent an agreement to boycott Peloton, it would have been in each Publisher's individual interest to license Peloton (*see* Opposition, at 12) is nothing more than rank speculation. If a publisher believed that Peloton was a willful copyright infringer—which it is—it would be

entirely rational for that publisher to file a copyright infringement lawsuit and await the outcome of that lawsuit—or at least developments in that lawsuit—before considering whether and on what terms to engage in further licensing negotiations.

As set forth in the moving brief, Peloton's own allegations provide further logical reasons why the Publishers would have ceased negotiations. (*See* Opening Br., at 13–14.) Peloton alleges that NMPA misrepresented the status of its discussions with Peloton, falsely told the Publishers that Peloton had withdrawn from negotiations, and disclosed confidential information in violation of an NDA. (Counterclaims ¶¶ 40, 60.) Accepting these allegations as true for purposes of this motion to dismiss, they supply alternative explanations for why the Publishers may have discontinued licensing negotiations with Peloton, and hence undermine the adequacy of the allegations that the discontinuation must have been part of a collusive boycott agreement. If each of the Publishers had been informed, as the counterclaim alleges, that Peloton had withdrawn from negotiations, there would be a "natural explanation" for why they would have stopped trying to negotiate with Peloton and instead pressed forward with the lawsuit. Peloton misunderstands the import of its own pleading, asserting that a "conspiracy based on misinformation is still a conspiracy." (Opposition, at 15.) The case it cites—*U.S.* v. *Wallace*, 85 F.3d 1063 (2d Cir. 1996)—is about an entirely different question: whether conspirators can still be liable for conspiracy if, unbeknownst to them, their conspiracy could not have been realized. *Id.* at 1068. Here, the question is whether the counterclaim plaintiff has adequately alleged a conspiracy in the first place. By alleging facts that provide a "natural explanation" for the Publishers' withdrawal from licensing negotiations, Peloton has shot its own case in the foot.[1]

---

[1]    Peloton mistakenly seizes on a footnote in the opening brief (Opposition, at 15 (citing Opening Br., at 14 n.5)) to argue that the alleged misrepresentations by the NMPA have no bearing on the antitrust question as an abandonment of this argument. The footnote provides no such support. The point of the footnote was that, even if NMPA had misrepresented the status of negotiations, that misrepresentation would not create *antitrust* liability. The allegation is still quite relevant to the instant question—whether Peloton has adequately alleged a conspiracy.

Without any allegations of fact sufficient to raise an inference of a concerted agreement to boycott Peloton, Peloton's assertions regarding the concentrated market structure, "interfirm communications," and participation in trade associations go nowhere.  As set forth in the moving brief, such allegations alone cannot establish conspiracy.  (Opening Br., at 14–15.) Peloton's burden is to allege facts supporting an inference of conspiracy.  It has not done so.

## C.    Peloton Has Failed to Plead a Rule of Reason Case

Besides the agreement to jointly file a copyright infringement case, which is privileged, the only other agreement sufficiently alleged in the Counterclaim is an agreement by each Publisher to allow the NMPA to negotiate copyrights on the Publisher's behalf.  Such an agreement is subject to the rule of reason rather than *per se* analysis under *BMI*.  441 U.S. 1; (Opening Br., at 16–18.)  Simply purporting to plead a *per se* case, as Peloton alleges (Opposition, at 16–17), is of no moment.

Peloton does not even discuss the controlling authority, *BMI*, in its response. Rather, it cites two cases that do not remotely stand for the proposition that joint copyright licensing is *per se* illegal.  *U.S.* v. *Apple, Inc.*, 791 F.3d 290 (2d Cir. 2015) involved a naked agreement among book publishers to fix the prices of e-books they sold through third-party online retailers.  Similarly, in *New York ex rel Spitzer* v. *Saint Francis Hosp.*, 94 F. Supp. 2d 399 (S.D.N.Y. 2000), "defendants [] fixed prices by jointly agreeing on the terms and rates they [] charge[d] for many of the services they provide[d]."  *Id.* at 413–15.  By contrast, an agreement to license intellectual property through a common agent is not *per se* illegal.  *American Needle, Inc.* v. *National Football League*, 560 U.S. 183, 203 (2010) (appointment of joint agent to license intellectual property rights for 32 separate NFL teams subject to rule of reason analysis); *Major League Baseball Props.* v. *Salvino, Inc.*, 542 F.3d 290, 334 (2d Cir. 2008) (appointment of single

6

firm as exclusive licensing agent for intellectual property of baseball teams not subject to *per se* analysis).

In order to state a rule of reason case under Section 1 of the Sherman Act, Peloton would have to plead a properly defined relevant market.  (*See* Opening Br., at 16–18); *Clorox Co.* v. *Sterling Winthrop, Inc.*, 117 F.3d 50, 56 (2d Cir. 1997); *Chapman* v. *New York State Div. for Youth*, 546 F.3d 230, 238 (2d Cir. 2008).  Here, the alleged relevant market—consisting solely of the sync rights in the repertory of the "Coordinating Publishers"—is not a proper relevant market because there is no allegation that the rights controlled by the "Coordinating Publishers" are not substitutable with the rights to musical works controlled by other publishers not a party to this lawsuit (such as third-party publishers from whom Peloton has admitted obtaining licenses). (Opening Br., at 16–18.)  Peloton has gerrymandered the market definition to encompass just the works controlled by the Publishers, which is contrary to relevant law.  *See In re American Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324, 343–44 (E.D.N.Y. 2019) (collecting cases disfavoring definition of "single brand" relevant markets).

Peloton recognizes that it cannot fit within *Meredith Corp.* v. *SESAC*, 1 F. Supp. 3d 180 (S.D.N.Y. 2014), where the court allowed a relevant market to be defined in the repertory of a performance rights organization ("PRO") because all television stations needed access to the entire music repertory of each PRO.  Peloton pleads that it "does not require licenses to all musical compositions, or even to all those compositions controlled (in whole or in part) by the coordinating publishers." (Opposition, at 17–18.)  Peloton nonetheless *also* pleads that it is difficult to identify the owners of the fractional interests in the compositions embodied in Peloton's classes, and therefore that it really needs "defendants' aggregated collective repertories." (Opposition, at 18–19.)  This assertion cannot solve the fundamental problem with Peloton's gerrymandered market definition.  In the Counterclaims, Peloton admits that the sync market does *not* require access to

7

all compositions in any particular Publisher's repertory. (Counterclaims ¶ 30.) That the reality of how a sync market operates is inconvenient to Peloton in light of its business model does not change antitrust law's requirements of relevant market definition—relevant markets are defined based on the general economic properties of the market, not a party's convenience or subjective preferences. *See Tanaka* v. *University of Southern California*, 252 F.3d 1059, 1063 (9th Cir. 2001).

## II.     PELOTON FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

Peloton fails to state a claim against NMPA for tortious interference with prospective economic relations and fails again to cure those deficiencies in the Opposition. Peloton does not adequately plead that (a) NMPA's conduct constituted the wrongful means necessary for a claim of tortious interference, or (b) it would have entered into synchronization licenses with music publishers "but for" NMPA's conduct. (*See* Opening Br., at 18–25.)

*First*, Peloton has not alleged that NMPA acted "for the sole purpose of inflicting intentional harm" on Peloton. For reasons discussed above, Peloton can point to no facts from which to draw an inference that NMPA engaged in "anticompetitive collusion" and violated the Sherman Act. (*See* Opening Br., at 7–18); *supra* Argument, Section I. As such, Peloton's deficient antitrust claims cannot constitute the necessary "wrongful means."[2]

---

[2]    There is no basis in the Counterclaims for Peloton's assertion that NMPA's alleged violation of its nondisclosure agreement with Peloton "constitutes an actionable misappropriation of trade secrets under both New York common law and the Defense of Trade Secrets Act." (*See* Opposition, at 20 n.2.) Peloton has not even attempted to plead that the information governed by the parties' NDA constituted a trade secret under either New York or federal law. Stating a valid claim for misappropriation of trade secrets requires "at minimum, that the plaintiff generally identify the trade secrets at issue." *Alexander Interactive, Inc.* v. *Leisure Pro Ltd.*, No. 14–cv–2796, 2014 WL 4651942, at *5 (S.D.N.Y. Sept. 16, 2014); *see also Sorias* v. *Nat'l Cellular USA, Inc.*, 124 F. Supp. 3d 244, 258 (E.D.N.Y. 2015) ("Conclusory assertions that something constitutes a trade secret[] . . . are insufficient."). Peloton's conclusory and vague assertions that the information subject to the NDA was "proprietary" (Counterclaims ¶ 41) are plainly insufficient. *See Alexander Interactive*, 2014 WL 4651942 at *5.

Even accepting as true Peloton's allegation that NMPA made "misrepresentations (about Peloton and its prior negotiations with NMPA) to individual publishers with whom Peloton was negotiating . . . with the purpose of disrupting Peloton's negotiations with such publishers" (Counterclaims ¶ 104), those vague alleged misrepresentations are *not* enough to state a claim. "[N]ot just *any* misrepresentation is sufficient to state a claim" for tortious interference. *Sidney Frank Importing Co.* v. *Beam Inc.*, 998 F. Supp. 2d 193, 212 (S.D.N.Y. 2014) (citing *Friedman* v. *Coldwater Creek, Inc.*, 321 F. App'x 58, 60 (2d Cir. 2009)) (emphasis in original). Rather, a misrepresentation must resemble "more culpable" conduct.[3] *Friedman*, 321 F. App'x at 60 (citing *Carvel Corp.*, 3 N.Y.3d at 190 (holding that alleged misrepresentation did not suffice to establish wrongful means).

The authority Peloton cites in its Opposition bolsters such a conclusion. There, the court found that allegations of misrepresentations made by the defendant "*in the service of personal gain*" were sufficient to state that the defendant "engaged in conduct for the sole purpose of inflicting intentional harm on" the plaintiff. *Clean Coal Techs., Inc.* v. *Leidos, Inc.*, 377 F. Supp. 3d 303, 323 (S.D.N.Y. 2019). Peloton has not alleged that NMPA made misrepresentations to the publishers "in service of" its "personal gain" or that *any* supposed misrepresentations rise to "more culpable" conduct. *See id.*; *Friedman*, 321 F. App'x at 60. Nor can it, because NMPA has done no such thing. NMPA's conduct at all times was "in service of" its member music publishers. As Peloton itself alleges, NMPA engaged in collective negotiations on behalf of music publishers with the intent to "obtain compensation for all past, present, and future uses of musical works" and insisted "on compensation for all its member publishers that had not previously entered into

---

[3] To be "more culpable," "as a general rule, the defendant's conduct must amount to a crime or an independent tort. Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations." *Carvel Corp.* v. *Noonan*, 3 N.Y.3d 182, 190 (N.Y. 2004).

9

agreements with Peloton." (Counterclaims ¶¶ 33, 35.)  For the same reasons, NMPA's conduct as alleged in the Counterclaims was not "malicious."

*Second*, Peloton has not plausibly alleged that it would have entered into synchronization licenses with music publishers "but for" NMPA's conduct.  Even for the Publishers with which Peloton allegedly engaged in negotiations, Peloton fails to make any non-conclusory assertions that those negotiations would have coalesced into deals but for NMPA's conduct; for many Publishers, Peloton has not alleged *any* such negotiations.  Though Peloton attempts to argue that a claim for tortious interference can extend to "mere negotiations," it is settled law that "the requirements for establishing liability for interference with prospective contractual relations are 'more demanding' than those for interference with performance of an existing contract."  *Union Carbide Corp.* v. *Montell N.V.*, 944 F. Supp. 1119, 1142 (S.D.N.Y. 1996).  Peloton fails to meet these "more demanding" requirements.  (Opening Br., at 23–24); *see also Arcadia Biosciences, Inc.* v. *Vilmorin & Cie*, 356 F. Supp. 3d 379, 405 (S.D.N.Y. 2019).

Moreover, despite Peloton's assertions to the contrary, "'but for' causation," which "has been endorsed by the New York Court of Appeals," "appear[s] to be the dominant standard"—not "reasonable expectation." *Guzik* v. *Albright*, No. 16-CV-2257, 2018 WL 4386084, at *7 (S.D.N.Y. Sept. 14, 2018).  Peloton's assertion that it had a "reasonable expectancy of entering into" licenses with publishers (Opposition, at 23) does not constitute "but for" causation, the "dominant standard."

**CONCLUSION**

For these reasons and those set forth in Counterclaim Defendants' opening brief, Counterclaim-Defendants respectfully request that the Court dismiss the Counterclaims in their entirety and with prejudice for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Dated:  New York, New York
        September 6, 2019

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:   /s/ Jay Cohen
        Jay Cohen
        Darren W. Johnson
        Elana R. Beale

1285 Avenue of the Americas
New York, New York 10019-6064
Phone:  (212) 373-3000
Fax:  (212) 757-3990
jaycohen@paulweiss.com
djohnson@paulweiss.com
ebeale@paulweiss.com

*Attorneys for Counterclaim Defendants*

11